No. 14-4049

IN THE

# United States Court of Appeals for the Fourth Circuit

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES WILLIAMS JR.,

Defendant-Appellant.

———————

**On Appeal From the
United States District Court for the Middle District
of North Carolina in Case No. 1:12-cr-00264-WO-1**

———————

**BRIEF OF APPELLANT**

———————

GREGORY DAVIS
OFFICE OF THE FEDERAL
  PUBLIC DEFENDER
301 N. Elm St., Ste 410
Greensboro, NC  27401
336-333-5463

PATRICIA E. ROBERTS
BRITTANY SADLER
ANDREW L. STEINBERG
WILLIAM & MARY LAW
  SCHOOL
P.O. Box 8795
Williamsburg, VA 23187
757-221-3821

TILLMAN J. BRECKENRIDGE
THOMAS W. PORTS, JR.
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com

May 29, 2014                                      *Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

Jurisidictional Statement ...................................................................1

Statement of the Issues ....................................................................1

Introduction ....................................................................................1

Statement of Case ............................................................................2

    A.    Deputy Russell Stops Williams for Speeding .....................2

    B.    The Traffic Stop Ends When Williams Receives a Warning
        Citation ...................................................................4

    C.    Williams is Seized a Second Time ....................................5

    D.    Soles Deploys a Drug Dog, the Dog Alerts, and the Officers
        Search Williams' Vehicle ............................................6

    E.    The Initial Suppression Hearing.........................................7

    F.    The District Court Again Denies the Motion to Suppress on
        Reconsideration .......................................................7

    G.    Williams is Convicted .....................................................9

Summary of Argument .....................................................................9

Standard of Review ..........................................................................11

Argument.........................................................................................12

I.    Detaining Williams A Second Time Was A Legally Distinct Stop
     Requiring An Independent Articulable Basis of Suspicion............12

II.   Alternatively, Continued Detention Was Unlawful Because It Was
      Not Based On Reasonable Suspicion Supported By Articulable Facts ........17

Conclusion ......................................................................................24

Request For Oral Argument................................................................25

Certificate of Compliance ..................................................................26

Certificate of Service ........................................................................27

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Johnson*,
  555 U.S. 323 (2009) ..........................................................................12

*California v. Hodari D.*,
  499 U.S. 621 (1991) ..........................................................................15

*Delaware v. Prouse*,
  440 U.S. 648 (1979) ..........................................................................12

*Florida v. Bostick*,
  501 U.S. 429 (1991) ..........................................................................15

*United States v. Arvizu*,
  534 U.S. 266 (2002) ......................................................................2, 19

*United States v. Branch*,
  537 F.3d 328 (4th Cir. 2008) .................................................... 18, 21

*United States v. Digiovanni*,
  650 F.3d 498 (4th Cir. 2011) ........................................ 18, 19, 20, 22

*United States v. Estrada*,
  459 F.3d 627 (5th Cir. 2006) ...........................................................12

*United States v. Garcia*,
  23 F.3d 1331 (8th Cir. 1994) ...........................................................12

*United States v. Green*,
  740 F.3d 275 (4th Cir. 2014) .........................................................2, 6

*United States v. Guijon-Ortiz*,
  660 F.3d 757 (4th Cir. 2011) ...........................................................22

*United States v. Hyppolite*,
  65 F.3d 1151 (4th Cir. 1995) ...........................................................16

*United States v. Johnson*,
  599 F.3d 339 (4th Cir. 2010) ...........................................................20

*United States v. Mason*,
  628 F.3d 123 (4th Cir. 2010) ...........................................................21

*United States v. Massenburg*,
  654 F.3d 480 (4th Cir. 2011) ...........................................................19

*United States v. Morin*,
    665 F.2d 765 (5th Cir. 1982) ...........................................................13

*United States v. Peters*,
    10 F.3d 1517 (10th Cir. 1993) ........................... 12, 13, 14, 16

*United States v. Powell*,
    732 F.3d 361 (5th Cir. 2013) ...................................... 12, 19

*United States v. Rusher*,
    966 F.2d 868 (4th Cir. 1992) ...........................................................18

*United States v. Santiago*,
    869 F. Supp. 2d 707 (E.D. Va. 2012) ........................... 19, 20

*United States v. Sokolow*,
    490 U.S. 1 (1989) ...........................................................14

*United States v. Vaughan*,
    700 F.3d 705 (4th Cir. 2012) ...................................... 19, 22

*United States v. Wilson*,
    953 F.2d 116 (4th Cir. 1991) ...........................................................15

*Whren v. United States*,
    517 U.S. 806 (1996) ...........................................................12

**Statutes**

18 U.S.C. § 3231 ...........................................................1

18 U.S.C. § 3742 ...........................................................1

28 U.S.C. § 1291 ...........................................................1

U.S. Const. amend. IV ...........................................................12

**Other Authorities**

WAYNE R. LAFAVE, 4 Search & Seizure § 9.3(f) (5th ed. 2013) ......................23

## JURISIDICTIONAL STATEMENT

Appellant Charles Williams, Jr. appeals his final judgment of conviction and sentence entered on January 10, 2014.  JA522.  Williams filed a timely notice of appeal on January 15, 2014.  JA528.  The District Court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1. Whether a law enforcement officer must have an independent justification to conduct a second *Terry* stop after concluding the first stop.

2. Whether a law enforcement officer exceeds the permissible scope and duration of a routine traffic stop by continuing detention solely to investigate matters not related to the traffic offense without reasonable suspicion of other criminal activity.

## INTRODUCTION

Once a law enforcement officer terminates a *Terry* stop, that officer—or his proxy—cannot initiate a second stop of the same individual absent newfound reasonable suspicion that a crime has been committed.  As the district court recognized, that is exactly what happened here.  But the district court did not recognize the legal import of its factual findings.  It failed to suppress the evidence obtained from the unconstitutional second stop—all of the physical evidence

entered at Williams' trial for drug possession with intent to distribute—and Williams was improperly convicted.

Moreover, an officer may not transform the dimensions of a permissible stop for a routine traffic offense into a drug-trafficking investigation absent reasonable suspicion of drug-related criminal activity. The Supreme Court, this Court, and other courts of appeals have consistently held that reasonable suspicion of criminal activity only warrants a temporary seizure limited to the purpose of the stop. But under the district court's analysis, a police officer may untether the permissible scope from the requisite justification. Such a ruling is irreconcilable with Circuit precedent. Reversal is therefore warranted.

## STATEMENT OF CASE

### A.    Deputy Russell Stops Williams for Speeding

Early one morning in February, 2012, Deputy Justin Russell and Sergeant Jerry Soles were patrolling Interstate 85 near Lexington, North Carolina in separate vehicles. JA285. Shortly after midnight, Sergeant Soles contacted Deputy Russell to report that he observed two speeding cars that appeared to be traveling southbound together. *Id*. About three minutes later, Sergeant Soles stopped the leading vehicle and Deputy Russell stopped the second vehicle. JA278.

Appellant Charles Williams, Jr. was driving the second vehicle with a female passenger in the front passenger seat. *Id*. Deputy Russell approached the

vehicle, told Williams that he stopped him for driving ten miles per hour over the speed limit, and asked him to produce his driver's license and vehicle registration. *Id*. Williams informed Deputy Russell the vehicle was a rental and provided his license and the rental agreement. *Id*. Deputy Russell then ordered Williams out of the vehicle and told him to sit in the front passenger seat of Deputy Russell's patrol car while he verified Williams' license and rental registration. JA279. Williams' passenger remained in the rental vehicle. *Id.* n.2.

As Deputy Russell conducted the license check, he asked Williams where he was traveling. *Id*. Williams responded that he had left his mother's house in Virginia Beach earlier that evening and was traveling to his brother's house in Charlotte, North Carolina. *Id*. Deputy Russell smelled alcohol on Williams' breath and asked whether he had anything to drink that evening. *Id.* Williams said he had a beer with dinner. *Id*. Deputy Russell contacted Sergeant Soles, who was still conducting the stop of the first vehicle, and requested assistance to administer a breathalyzer test. *Id*.

Soles then warned Williams' brother, who was driving the first vehicle, to slow down and informed him that he was free to go. JA286. Soles returned to his car and drove to join Russell. JA279. Soles exited his vehicle and approached the front passenger seat of Russell's patrol car, where Williams was still seated. JA280. Soles asked Williams where he was traveling and he responded that he

- 3 -

was traveling to Charlotte with his brother, who was driving the first vehicle Sergeant Soles pulled over. *Id.* Sergeant Soles then administered the breathalyzer test through the window of the vehicle. *Id.*

Meanwhile, Deputy Russell had exited his vehicle to speak with Williams' passenger, who confirmed that Williams had one drink and that they were traveling to Charlotte. *Id.* When Deputy Russell returned to his vehicle, Sergeant Soles informed him that Williams' blood alcohol content was within the legal limit. JA281. At that point, Deputy Russell informed Williams that he would issue a warning ticket for speeding. *Id.* Sergeant Soles remained on the passenger side of the vehicle and continued to observe Williams as Deputy Russell completed the ticket. *Id.*

### B.    The Traffic Stop Ends When Williams Receives a Warning Citation

To write the ticket, Russell asked Williams for additional information, including his address. *Id.* Williams provided a post office box. *Id.* Sergeant Soles, through the open window, asked Williams where he lived. Williams responded that he lived in New York and New Jersey with his passenger and their child. *Id.* As Deputy Russell continued writing the ticket, Sergeant Soles again asked where Williams was traveling and how long he intended to stay. *Id.* Williams, consistent with what he told Deputy Russell and Sergeant Soles earlier, said he was traveling to Charlotte to visit his brother for a few days. *Id.* Deputy

- 4 -

Russell interjected, stating that the rental car agreement would expire that afternoon. JA282. Williams said he would renew it when they arrived in Charlotte. *Id.* Russell then completed the warning ticket and gave it to Williams, who was now free to leave. *Id.* The District Court found that, at this point, the fifteen-minute traffic stop concluded. JA308.

### C.    Williams is Seized a Second Time

After the stop ended, when Deputy Russell returned Williams' license and issued the warning citation, Deputy Russell asked Williams if he could ask Williams a question. JA282. Williams responded affirmatively. Deputy Russell asked if there was anything illegal in the vehicle. *Id.* Williams stated there was not. Deputy Russell then asked if he could search the car. *Id.* Williams said "uhh" and continued to open the car door. *Id.* Deputy Russell repeated his question three more times and, each time, Williams provided vague responses.[1] *Id.*

Williams then exited the car, walked toward his vehicle, and did not respond to Deputy Russell, who had again asked whether Williams was giving consent to

---

[1] In response to the first request, Williams responded with "uhhh." Russell then repeated the question and Williams asked "for alcohol?" Russell repeated the question for a third time and Williams responded by stating "there ain't any alcohol in there—we haven't been drinking." Russell stated "I am just asking you if I can search the vehicle." Williams responded "you can look inside, there ain't no alcohol inside, no open container, nothing, I only had a beer. To clarify, Russell asked "so you are saying I can look inside the vehicle?" Williams responded inaudibly, and Russell stated "huh?" Deputy Russell again, for the fourth time, asked for consent. JA282.

search.  *Id.*  Deputy Russell and Sergeant Soles followed Williams as he

approached his vehicle.  Williams opened the rear driver's side door and pointed in

the vehicle.  *Id.*  Sergeant Soles then ordered Williams to step to the rear of the

vehicle and out of the highway.  *Id.*  Williams obeyed.  *Id.*

Sergeant Soles then sought clarification, explaining to Williams that

Sergeant Soles and Deputy Russell needed a yes or no answer about whether they

could search the vehicle.  *Id.*  When Williams said no, Sergeant Soles detained

Williams to conduct a canine sniff, and ordered Williams' passenger out of the

vehicle.  *Id.*  About two minutes elapsed from the time Williams was free to leave

to when Soles detained Williams, and then his passenger, and about three minutes

elapsed from the time Williams was detained to conclusion of the drug sweep.

JA283-84.

### D.    Soles Deploys a Drug Dog, the Dog Alerts, and the Officers Search Williams' Vehicle

After Williams' passenger exited the vehicle, Soles deployed the drug dog

that he kept in his patrol car.  JA284.  Soles began a counter-clockwise sweep at

the rear of the vehicle and the dog alerted to the presence of narcotics on the rear

driver's side of the trunk at the end of the sweep.  *Id.*  Based on the alert, the

officers searched the vehicle.  Russell and Soles discovered an open safe in the

trunk which contained, among other things, approximately two and one half ounces

of cocaine, two digital scales, $4,010.00 in currency, and empty clear plastic bags.

JA453-461.  The officers then arrested Williams and MacMullen and transported them to the local jail.

### E.    The Initial Suppression Hearing

Williams was charged with possession of cocaine with intent to distribute it. JA12.  He immediately moved to suppress the evidence seized from the vehicle search.  The government presented the testimony of Deputy Russell and Sergeant Soles.  JA277-78.  Based on the officers' testimony and the video evidence from Deputy Russell's patrol video, the court denied the motion to suppress, finding Soles possessed reasonable suspicion warranting the extension of stop from the time Russell issued the warning citation.  JA276.  The court ruled that Soles possessed reasonable suspicion of drug trafficking because Williams was traveling on a known drug corridor around midnight; his stated travel plans to remain in Charlotte for a few days would exceed the return date for the rental car; he did not provide a permanent home address but instead gave a post office box; and that the driver of the front vehicle denied any association with Williams despite Williams' assertion that he was traveling with his brother, who was driving the first car. JA298.  All of this was known to the officers before the first stop concluded.

### F.    The District Court Again Denies the Motion to Suppress on Reconsideration

On the morning of trial, Williams moved the district court to reconsider its prior ruling because the government disclosed two weeks before trial the video

recording from Soles patrol vehicle.  JA276.  The Court granted the motion, continued the trial, and scheduled a second evidentiary hearing.  *Id*.

The newly disclosed video contradicted Soles prior testimony at the first suppression hearing that the driver of the first vehicle denied an association with Williams.  The Court modified its previous factual findings and found that Soles' in-car video recorder contradicted his prior testimony on that point, and no longer considered the factor as a possible basis for providing reasonable suspicion.  JA293 n.8.  Nevertheless, the Court reaffirmed its prior conclusion and denied Williams' motion to suppress.  JA315.

In its revised opinion, the district court ruled that Soles possessed reasonable suspicion of drug trafficking to justify the second detention because Williams was traveling on a known drug corridor around midnight; his stated travel plans to remain in Charlotte for a few days would exceed the return date for the rental car; and he provided a post office box instead of a physical address.  JA306.  Soles and Russell knew all these factors at the time they issued the warning citation and both decided to terminate the stop.

The Court found that the conversation between Russell, Soles, and Williams following the completion of the traffic stop was consensual and did not violate the Fourth Amendment.  JA306-07.  It further noted that Soles' request that Williams step out of the road as he attempted to return to his vehicle was not evidence of a

detention because Soles had a legitimate concern about Williams' safety and because Williams had given ambiguous responses to requests for consent to search the vehicle. JA310-11. The Court also ruled that the time between the termination of the consensual encounter—when Williams refused consent—and the drug's dogs alert was *de minimis* and did not violate the Fourth Amendment. JA312-14.

### G. Williams is Convicted

After a three-day trial, a jury convicted Williams guilty of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(b). JA7-9. The passenger, a co-defendant, was acquitted. JA7-8. The district court sentenced Williams to seven years of imprisonment and five years of supervised release. JA522-25.

## SUMMARY OF ARGUMENT

When law enforcement officers end a *Terry* stop, they cannot rely on their observations or evidence from that stop and before that stop to justify stopping the person again. There must be new, articulable reasonable suspicion that a crime has been committed. Otherwise, police officers would be able to continue stopping anyone over and over again based on the same suspicious behavior that already had turned up nothing to convert that reasonable suspicion into probable cause to arrest. Deputy Russell initially stopped Williams for speeding. The stop ended when Deputy Russell issued Williams a formal warning citation, returned his

driver's license, and allowed him to exit the front passenger seat of his patrol car. At this point, Deputy Russell and Sergeant Soles neutralized any suspicions they uncovered during the investigation of the traffic offense and confirmed they lacked a sufficient basis to detain Williams for any other purpose.

A second detention, during which a drug-sniffing dog was deployed, occurred shortly after Williams attempted to return to his vehicle and proceed with his travels. This detention required an independent basis of reasonable suspicion because the justification for the initial stop ceased to exist when the officers had released Williams. The only significant event that transpired between Deputy Russell ending the initial detention and when Sergeant Soles again detained Williams to investigate suspicions of drug trafficking was Williams' assertion of his constitutional right to refuse to let the officer search his car. Williams' invocation of his right to refuse consent cannot be used in part or whole to form the reasonable suspicions of criminal activity justifying a *Terry* stop. Absent new, independent indicia of criminality after the traffic stop, Sergeant Soles lacked justification to detain Williams for drug trafficking. Accordingly, the second detention violated Williams' rights under the Fourth Amendment.

Even if the events had constituted a continuous traffic stop, the officers exceeded the scope of the initial stop for speeding by deploying a drug dog. Once the purpose of the traffic stop is completed, a police officer may not further detain

a vehicle or its occupants unless the officer possesses objective reasonable suspicion of criminal activity or the encounter is consensual. After Deputy Russell issued a warning ticket, the justification for the initial traffic stop ceased, and at that time, the totality of the circumstances did not amount to reasonable suspicion sufficient to transform the scope of a routine traffic stop into a drug trafficking investigation. Continuing to detain Williams and questioning him about whether he could search the vehicle was unrelated to the justification for the traffic stop.

For these reasons, this Court should vacate William's conviction with directions to enter an order suppressing all evidence obtained during the unconstitutional second stop and all evidence derived from that stop and the subsequent arrest.

## STANDARD OF REVIEW

When considering a district court's denial of a motion to suppress, this Court reviews factual findings for clear error and legal conclusions de novo. *United States v. Arvizu*, 534 U.S. 266, 275 (2002); *United States v. Green*, 740 F.3d 275, 276 (4th Cir. 2014).

## ARGUMENT

**I. Detaining Williams A Second Time Was A Legally Distinct Stop Requiring An Independent Articulable Basis of Suspicion**

Traffic stops are seizures. U.S. Const. amend. IV; *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop begins when a car "is pulled over for investigation of a traffic violation" and "ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). In this case, the officers initial justification for the stop—speeding—is not disputed. But once the officer's initial suspicions "have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) "This is because a detention must be temporary and last no longer than is necessary to effect the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

Once a stop ends, law enforcement cannot stop the person again unless they have new, articulable basis for reasonable suspicion that is independent from the prior stop. *United States v. Peters*, 10 F.3d 1517, (10th Cir. 1993). *See also United States v. Garcia*, 23 F.3d 1331, 1333-34 (8th Cir. 1994) (second stop violated Fourth Amendment when only new information between first and second

stop was learning of a prior firearms violation); *United States v. Morin*, 665 F.2d 765, 769 (5th Cir. 1982) (arrest following second investigatory stop violated Fourth Amendment because subsequent stop was made without the benefit of any new information). In *Peters*, 10 F.3d at 1519, two men had been legally stopped and searched in a rented truck. The men acted nervously during the stop, and continued to act nervous after the officer returned the driver's license and the stop had ended. *Id*. The officer "developed a hunch that he had missed something" and then called ahead to another officer. *Id*. at 1519-20. The second officer "was told that, despite the exculpatory results of the first investigation, the [first] officer remained suspicious of illegal activity because the suspects had acted nervous during the first traffic stop." *Id*. at 1520.

When the second officer located the truck, he found that the men acted nervously when they saw his car traveling beside them. *Id*. So, the second officer initiated a second stop. *Id*. During the second stop, the second officer discovered that one of the men was an illegal alien using a counterfeit social security card. *Id*. The court determined that evidence of the men acting nervously before the second stop was not evidence of illegal activity because the men already had been pulled over, and it would be normal for anyone to become nervous to be followed by police a second time. *Id*. at 1522.

"Moreover, nervous behavior had already been exhausted as a ground to support a stop" by the first officer or anyone who had been contacted by the first officer. *Id*. In short, no officer could rely on evidence of illegal activity used to support the first stop, after the first stop ended in exculpation. *Id*. "The officer who performed the original investigation . . . may not release the suspect as required by *Terry* and *Place*, wait until he has traveled down the road a few miles, and then make a second *Terry* stop based solely on the conduct that has already proved illusory." *Id*. A second stop must be predicated on and independent, adequate basis for suspicion from the first stop. The reasoning behind this rule is evident. Without it, one legal traffic stop could turn into multiple harassing seizures at the whim or "hunch" of any law enforcement officer. Of course, reasonable suspicion cannot be supported by a "hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (an officer must "be able to articulate something more than an inchoate and unparticularized suspicion or hunch" to support reasonable suspicion).

Here, Officers Russell and Soles contravened Williams' Fourth Amendment rights when they seized him a second time and then conducted a search for drugs. After Russell handed Williams his license, registration, and the warning ticket, Williams was free to go, and the justification for the detention ceased. JA281-82.

As the district court recognized, at this point in the encounter Williams was free to go, thus ending the initial traffic stop.  JA308.

Russell then questioned Williams after the stop ended about the presence of contraband and sought consent to search the car.  JA282-83  After some ambiguous indications from Williams, Officer Soles told Williams that Russell's question required a "yes" or "no" answer about whether they had consent to search.  *Id*.  Williams said "no," and then the officers told Williams to move to the side of the road, made his passenger leave the car, and brought out a drug-sniffing dog.  JA284.  By any measure, this amounted to a second stop.  *Florida v. Bostick*, 501 U.S. 429, 439 (1991) (whether a police-citizen encounter is consensual turns on whether a reasonable person would have felt free to decline the officer's request or terminate the encounter).  No reasonable person would feel free to leave at this point.  But whether measured from the time the officers repeatedly asked for consent to search the car or when they told Williams to step to the side of the road so that they could deploy a drug-sniffing dog, a second detention occurred after the initial traffic stop because Williams submitted to the show of authority.  *See California v. Hodari D.*, 499 U.S. 621, 628 (1991), *United States v. Wilson*, 953 F.2d 116, 123 (4th Cir. 1991) (explaining that when defendant initially consented to encounter but attempted to terminate it by walking away, officers' repeated

requests for consent to search "may be the functional equivalent of physical restraint").

To make this second stop, the officers needed new, articulable, independent basis for reasonable suspicion. *Peters*, 10 F.3d at 1522. They did not have any such basis. Indeed, the only thing that happened between the first and second stops was that the officers repeatedly asked Williams for consent to search the car, and Williams gave ambiguous answers and ultimately said "no." That cannot serve as the basis for reasonable suspicion. Williams' invocation of his right to refuse consent to search the vehicle cannot be used in part or whole to form the reasonable suspicion of criminal activity justifying a *Terry* stop. In *Bostick*, 501 U.S. at 437, the Supreme Court noted that it is well settled that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."

If this court allowed a finding of suspicion to rest upon the assertion of a constitutional right, police officers would have carte blanche to detain. *See United States v. Hyppolite*, 65 F.3d 1151, 1157 (4th Cir. 1995) ("In *Wilson*, [this Court] expressed [its] concern that if an officer could consider the manner in which a suspect asserted his rights, a suspect could never deny consent to search without creating reasonable suspicion for the officer to seize the suspect."). Allowing an individual's decision to decline consent to justify a *Terry* stop would contaminate

the voluntariness of consensual encounters and effectively transform all consensual encounters into seizures, and it would also allow officers who lack a sufficient basis for detention to generate the justification for the stop based on the individual's response preceding the stop.

Accordingly, Williams' refusal to consent cannot provide the justification for the stop.  The district court recognized that "the video evidence shows that the traffic stop was complete when Deputy Russell returned Williams' license and registration and issued him the warning ticket."  JA308.  But then it only addressed whether the amount of time for the second stop was *de minimis*, and did not consider whether it was supported by new, articulable reasonable suspicion based on independent evidence.  JA308-15.  Given the fact that the officers conducted a second *Terry* stop without reasonable suspicion, the second stop violated Williams' Fourth Amendment right against unreasonable seizure.  And it is indisputable that Williams' arrest and all evidence that led to his conviction derived from this second *Terry* stop that violated the Fourth Amendment.  Thus, it is fruit of the poisonous tree, *Peters*, 10 F.3d 1523 (suppressing evidence), and the district court should have granted Williams' motion to suppress the evidence.

## II.    Alternatively, Continued Detention Was Unlawful Because It Was Not Based On Reasonable Suspicion Supported By Articulable Facts

Even if there were not two distinct *Terry* stops, it was unlawful to continue the detention beyond the time and scope necessary to issue the traffic warning.  "If

a police officer wants to detain a driver beyond the scope of a routine traffic stop . . . he must possess a justification for doing so other than the initial traffic violation." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008). Here, the officers completed the traffic stop but detained Williams to pursue an unrelated and unsupported drug investigation. The continued detention was unlawful because the officers detained Williams without his consent and cannot articulate reasonable suspicion to support expanding the scope of the detention.

To determine whether consent or reasonable suspicion is required, the "constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose . . . . [O]nce the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver 'must be allowed to proceed on his way.'" *Branch*, 537 F.3d at 336 (internal citations omitted) (quoting *United States v. Rusher*, 966 F.2d 868, 876 (4th Cir. 1992)). As such, "where the traffic stop has concluded . . . any subsequent detention is impermissible without the presence of reasonable suspicion." *United States v. Digiovanni*, 650 F.3d 498, 508 (4th Cir. 2011). Here, the officers completed the traffic investigation and issued a warning ticket before broadening the scope of the investigation to generally just ask permission to search the vehicle. JA282. Thus reasonable suspicion must support all investigation that occurred after Russell issued the warning ticket.

Reasonable suspicion must be apparent after examining the totality of the circumstances to discover "whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012) (quoting *United States* v. *Arvizu*, 534 U.S. 266, 273 (2002)). This Court "has stressed its significant concerns with the government's proffering 'whatever facts are present, no matter how innocent, as indicia of suspicious activity.'" *United States v. Santiago*, 869 F. Supp. 2d 707, 716 (E.D. Va. 2012) (citing *Powell*, 666 F.3d at 182; *United States v. Massenburg*, 654 F.3d 480, 482 (4th Cir. 2011); *Digiovanni,* 650 F.3d at 512). Taken together, the facts offered here do not amount to reasonable suspicion sufficient to justify continued detention and drug investigation.

This Court recently held the government lacked reasonable suspicion in a similar case. In *Digiovanni*, the government attempted to justify a continued detention where the detainee drove a rented car, was traveling on a known drug corridor, was nervous, gave indirect answers to questions, and kept a change of clothes and hygiene bag in the car without luggage. 650 F.3d at 513. The court found that the "articulated facts, in their totality, simply [did] not eliminate a substantial portion of innocent travelers" and thus held the stop unlawful. *Id.* It noted it is appropriate to "rely upon the experience and specialized training of [a] police officer, [but] the Government must also be able to either articulate why a

particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity." *Id.* at 512 (citation and internal quotation marks omitted) (quoting *United States v. Johnson*, 599 F.3d 339, 343 (4th Cir. 2010)).

Likewise, in *United States v. Santiago*, the district court for the Eastern District of Virginia ruled a state trooper lacked reasonable suspicion of criminal activity to investigate matters unrelated to the reason for the traffic stop and sweep with a drug-detection dog. 869 F. Supp. 2d 707, 716 (E.D. Va. 2012). There, the government argued the officer had reasonable suspicion to justify a drug investigation because the passengers had recently flown in to the nation's third largest drug distribution city from Puerto Rico, days after arriving they began traveling over a thousand miles North in a rented car up a known drug corridor at a substantial cost, they were using a new GPS device the police could not track as easily as a factory-installed device, they carried one piece of luggage for two people, and they exhibited extreme nervousness. *Id.* These facts were not enough to transform a routine traffic stop into a drug investigation. *Id.*

So too here. The government's attempt to justify the continued detention came down to four facts: (1) Williams was driving a rental car, (2) along Interstate 85, a purportedly known drug corridor, late at night, (3) the rental agreement for the car expired the next afternoon, and (4) Williams did not provide a physical

home address.  JA306.  These factors are even less suspicious than those offered in *Digiovanni* and *Santiago*.  They are in no way connected to drug activity and, taken together, are fully consistent with lawful activity.  They cannot and do not rise to the level of "reasonable articulable suspicion."  Cases finding such suspicion provide a useful contrast.

In *Branch*, this Court found "reasonable articulable suspicion of narcotics activity" based on excessive air fresheners often used to hide drug odors, the officer's knowledge the suspect was a known drug dealer who had been pulled over a month earlier in an "open air drug market," and that the driver and his passenger were nervous as shown by their failure to make eye contact and that the driver's hands were shaking.  537 F.3d at 338-39.  The driver also inaccurately said the car's owner was out of the country.  *Id.* at 333.  Similarly, in *United States v. Mason*, an unusual amount of air fresheners and extreme nervousness, combined with conflicting stories, a failure to pull over promptly, and other factors created reasonable suspicion of drug-related activity.  628 F.3d (4th Cir. 2010) at 128-29.  In *Vaughan*, the officers relied on nervousness and shaking, the fact that there were four cellphones in the car, including two prepaid phones, as well as conflicting and changing stories to establish reasonable suspicion.  700 F.3d at 711-12.

In *Branch, Mason,* and *Vaughan*, there were drug-specific indicators to justify detention for and investigation of drug-related activities.  There are no such

factors here—no excessive air fresheners, no prepaid cell phones, no knowledge of past drug activities. Moreover, the district court found other factors were not present—Williams was not unusually nervous and he and his passenger did not offer conflicting or changing stories. JA295-98. The reasons offered by the government are not sufficient to provide reasonable suspicion of drug trafficking activity and extending the traffic stop beyond its original scope was unlawful.

The officers clearly exceeded the permissible scope of the detention. This Court has "explained: the scope of a police officer's actions during a traffic stop still is relevant to the reasonableness analysis under the Fourth Amendment." *United States v. Guijon-Ortiz*, 660 F.3d 757, 766 (4th Cir. 2011) (internal marks and citations omitted). In *Digiovanni*, the government argued the overall stop was only about 15 minutes, and thus reasonable. 650 F.3d at 510-11. This Court rejected that argument, stating "investigative stops must be limited both in scope *and* duration. Creating a rule that allows a police officer fifteen minutes to do as he pleases reduces the duration component to a bright-line rule and eliminates the scope inquiry altogether." *Id.* at 511 (emphasis in original). The scope of the officers' investigation was unreasonable, therefore Williams' stop was unreasonable.

Because the officers completed the traffic investigation and issued the relevant warning, there can be no question the dog sniff was beyond the scope of

that investigation.  Finding that the officers' actions here were constitutionally reasonable would untether traffic enforcement from its stated purpose, to keep the roads safe, and allow traffic stops to be used as a means for onerous and degrading fishing expeditions for evidence of any crime.  *See* WAYNE R. LAFAVE, 4 SEARCH & SEIZURE § 9.3(F) (5th ed. 2013).  "Allowing use of the drug dogs *at all* in conjunction with traffic stops can only encourage the making of stops for insignificant and technical violations on the basis of unarticulated suspicions and mere hunches or, at worst, on totally arbitrary and discriminatory bases."  *Id.* Accordingly, regardless of whether there was one *Terry* stop or two, Williams' detention was unlawful and the district court erred by failing to suppress evidence arising from the illegal detention.

## CONCLUSION

For the foregoing reasons, Appellant Charles Williams, Jr. respectfully requests that this Court vacate his conviction and sentence and reverse the district court's order denying the motion to suppress.

/s/ Tillman J. Breckenridge
TILLMAN J. BRECKENRIDGE
THOMAS W. PORTS, JR.
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C. 20005
202-414-9200
tbreckenridge@reedsmith.com

PATRICIA E. ROBERTS
BRITTANY SADLER
ANDREW L. STEINBERG
WILLIAM & MARY LAW
    SCHOOL
P.O. Box 8795
Williamsburg, VA 23187
757-221-3821

GREGORY DAVIS
OFFICE OF THE FEDERAL
    PUBLIC DEFENDER
301 N. Elm St., Ste 410
Greensboro, NC 27401
336-333-5463

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests the Court schedule oral argument in this case.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

this Brief of Appellant is proportionately spaced and contains 5,366 words

excluding parts of the document exempted by Rule 32(a)(7)(B)(iii).

<u>/s/ Tillman J. Breckenridge</u>
Tillman J. Breckenridge
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com

May 29, 2014                    *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I certify that on May 29, 2014 the Brief of Appellant was served on all

parties or their counsel of record through the CM/ECF system or, if they are not,

by serving a true and correct copy at the address listed below:

Mr. Terry Michael Meinecke
U.S. Attorney's Office
P.O. Box 1858
Greensboro, North Carolina 27402
336-333-5351
terry.meinecke@usdoj.gov

*Counsel for Plaintiff-Appellee*

/s/ Tillman J. Breckenridge
Tillman J. Breckenridge
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com

May 29, 2014                    *Counsel for Appellant*